No. 13,762.

NEIGHBORS OF WOODCRAFT *v.* WESTOVER ET AL.
(61 P. [2d] 585)

Decided September 28, 1936.

Mr. CLARENCE L. BARTHOLIC, for plaintiff in error.

Mr. FRANK SEYDEL, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THIS action was instituted by defendants in error, as beneficiaries under a benefit certificate issued by the Neighbors of Woodcraft, plaintiff in error, hereinafter called the society.

The society issued its benefit certificate December, 1925, to Drury B. Watson, a member, for the principal sum of $2,100, payable as death benefit. The certificate contained a provision for payment of one-half the principal sum in the event of death by suicide. It is admitted that Watson committed suicide; that the society paid, and the beneficiaries received, one-half the principal sum as provided. Thereafter the beneficiaries filed this action to recover from the society the unpaid half of the principal sum, basing their action principally upon the ground that the society was not exempt from the provisions of the Colorado insurance laws to the effect that suicide shall not be a defense against the payment of a life insurance policy. Trial was had to the court without a jury with a resulting judgment in favor of the beneficiaries. The society assigns error.

Concerning some of the questions, important in the determination of this case, there is no dispute; it being admitted that the society is a fraternal society operating on the lodge plan with a secret ritual and a representative form of government for the benefit of its members and not operating for pecuniary profit or gain; that it was admitted to do business in the state of Colorado as a fra-

ternal benevolent society; that the certificate involved was issued to Watson in December, 1925, and was in full force and effect March 22, 1934, the date he committed suicide in California. The original certificate, offered as Exhibit A and admitted in evidence, contained the following provisions:

On the face of the certificate: "This benefit certificate is hereby made expressly subject to all the answers and warranties made by the member to whom it is issued, and set down over his signature in his Medical Application for Benefits; and this Certificate is further hereby made expressly subject to all the conditions endorsed or printed hereon, all of which are hereby made a part hereof, whether printed on the face or back of this Certificate, and is also made subject to all the conditions named or provided, or that may be hereafter named or provided in the Constitution of Neighbors of Woodcraft."

On the back of said certificate, as one of the conditions, appears the following:

"(4) I understand and agree that should I, voluntarily or involuntarily, at any time take or destroy my own life, either intentionally or otherwise whether sane or insane at the time this Association shall not be liable to my beneficiaries, or to any one who may make any claim hereunder, for more than one-half the amount that would be due if my death had occurred from any other cause while in good standing."

Reference is made in the paragraph first above quoted to the constitution of the society, which, under the laws of Colorado governing fraternal and benefit societies, is made a part of the contract between the society and the insured. This constitution contained the following provision:

"Section 250. Suicide of Benefit Member. Should any benefit member of this association take or destroy his or her own life, voluntarily or involuntarily, while sane or insane, the association shall not pay or be liable to the beneficiaries of such member or to any person who

234

may make any claim under the benefit certificate for more than one-half the sum that would be due had the member's death occurred from other cause, while in good standing, regardless of date or issue of the certificate, held by such member or conditions named therein.''

A determination of this case rests upon the answers to two questions: First. Whether on a certificate issued December, 1925, the society is exempt from the provisions of the general insurance laws, sections 2471 to 2598, C. L. 1921, and particularly section 2532, which is as follows: ''From and after the passage of this act, the suicide of a policy-holder after the first policy year, of any life insurance company doing business in this state, shall not be a defense against the payment of a life insurance policy whether said suicide was voluntary or involuntary, and whether said policy-holder was sane or insane.'' This latter section has been amended by chapter 113, S. L. 1933 and chapter 136, S. L. 1935. Second: Is the society controlled by, and therefore exempt under, the fraternal benefit society act, sections 2599 to 2633, C. L. 1921, from the general insurance law, and particularly does section 2602, supra, exempt the society from the provisions of section 2532, supra?

The suicide provision, section 2532, so far as life insurance is concerned, directs its provisions to the policies of ''any life insurance company.'' Section 2472 of the general insurance code defines ''insurance companies'' as ''corporations, associations, partnerships or individuals engaged as insurers in the business of insurance or suretyship *except fraternal or benevolent orders and societies.*'' Another section, 2508, specifically exempts fraternal benefit societies from ''this act,'' as follows: ''This act shall not apply to fraternal benefit societies as defined in chapter 139 of the laws passed at the eighteenth session of the general assembly of the state of Colorado, except as therein otherwise expressly provided.'' Chapter 139 is now the fraternal benefit society act contained in sections 2599 and 2633, herein-

before mentioned. It thus appears beyond a doubt that it has been the consistent intention of the legislature to exempt fraternal benefit societies—as the society here involved is admitted to be—from the operation of the general insurance law of the state, as amended from time to time, particularly the "suicide" clause. A further like intention is manifest in the laws enacted for the government and control of fraternal benefit societies, where again such societies are specifically exempt from the provisions of the general insurance laws of the state by section 2602 which is as follows: "Except as herein provided, such societies shall be governed by this act and shall be exempt from all provisions of the insurance laws of this state, not only in governmental relations with the state, but for every other purpose, and no law hereafter enacted shall apply to them, unless they be expressly designated therein."

Section 2532, supra, the "suicide" clause, being a part of the general insurance laws of the state, its provisions cannot be applied to the defense set up by the society in this case, because neither the "suicide" provision, nor any amendments thereto, designate its application to fraternal benefit societies, which the legislature has expressly provided must be done.

▆▆ Deceased made application for membership in the society and upon being admitted, received a certificate specifying the amount of benefit thereunder, and providing that the certificate as issued, the articles of incorporation of the society, its constitution and laws together with his membership and medical examination, and all amendments thereto, constituted the agreement between himself and the society. The certificate was particularly conditioned for the payment of only one-half the principal sum in the event the applicant or member committed suicide. Watson retained the certificate for a period of years, kept same in force, and the society being specifically exempt from the operation of any law contrary to its provisions, is entitled to the protection the

236

member chose to give it. His beneficiaries cannot now enforce any greater claim than properly could be based upon the contract which their benefactor accepted.

Judgment reversed.

MR. CHIEF JUSTICE CAMPBELL and MR. JUSTICE BURKE concur.